```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

DUSTIN S. TARR                      *

        Plaintiff                   *

        vs.                         *CIVIL ACTION NO. MJG-01-3029

LANKFORD-SYSCO FOOD SERVICES,       *
LLC
        Defendant                   *

*       *       *       *       *       *       *       *       *
```

## MEMORANDUM AND ORDER

The Court has before it Defendant's Motion for Summary Judgement [Paper 56], Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim [Paper 55], Plaintiff's Motion for Leave to File a Surreply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motions for Summary Judgment[1] [Paper 60], and the materials submitted by the parties related thereto.  The Court finds a hearing unnecessary.

I. BACKGROUND[2]

Plaintiff Dustin Tarr ("Plaintiff" or "Tarr"), who suffers from epileptic seizures, applied for the position of Selector with Defendant Lankford-Sysco Food Services, LLC

---

[1] The Court has considered the Surreply.

[2] In the present summary judgment context, it is necessary to assume that the Plaintiff's version of the disputed facts is correct.

("Defendant" or "Lankford-Sysco") in March of 2002.  The position of Selector entails filling orders for food products by pulling the various products from different locations in the warehouse, placing them on pallets, and moving the pallets to the loading dock.  Plaintiff went through the interview process, but was not hired.

Defendant has a two part interview process.  First the applicant fills out an application and is interviewed by Tobey McNeece ("McNeece"), Lankford-Sysco's Recruitment Coordinator.  The interview generally consists of questions regarding the qualities listed on the Interview Evaluation Form ("IEF") and set forth in the Operations Interview Guide ("OIG").  Included are questions concerning the applicant's work experience, strengths, and weaknesses.  The applicant is asked to identify the most physically demanding task he has performed in the last thirty (30) days and to identify any accidents he has had in the workplace.  After the interview, McNeece completes the IEF evaluating the applicant on the basis of several criteria including physical impression, initiative, physical ability to perform job, and self-confidence.  If, based on the application and interview, McNeece feels that the applicant is not qualified, the process is complete and the applicant is rejected.

If McNeece determines that the applicant is qualified or if she needs a second opinion, a second interview is scheduled with Tom Kellam ("Kellam"), Lankford-Sysco's Night Manager for Selectors.  After this interview, Kellam completes an IEF and makes a hiring recommendation at the bottom of the form.  IF McNeece and Kellam agree that the applicant should be hired, the applicant is offered a job.  If they agree that the applicant should not be hired, the applicant is rejected.  If the two do not agree, Becki Shumaker, ("Shumaker") Lankford-Sysco's Vice-President of Human Resources, assists the two in making the final decision.

Plaintiff interviewed with McNeece.  When asked if Plaintiff had ever been injured on the job, Plaintiff said that he had fallen and hit his head while working at a restaurant.  Plaintiff said that shortly thereafter, he had a seizure.  McNeece followed up by asking Plaintiff if he was taking any medications.  Plaintiff responded that he was taking medication to treat epilepsy.  During the interview, McNeece also asked if Plaintiff had any back problems.  Plaintiff responded that he had a cyst removed from his back in 1998.  At the end of the interview, McNeece went to talk to Shumaker.  When she returned, she asked Plaintiff to ask his doctor for medical clearance to do the job of Selector.  Plaintiff agreed.  McNeece then completed the IEF giving

Plaintiff a favorable evaluation and noting that Plaintiff had had a seizure, was epileptic, and had a cyst removed from his back.

Plaintiff later called McNeece to inform her that he had been cleared by his doctor.  McNeece set up a second interview with Kellam.  Plaintiff gave Kellam a written release from his doctor and had a brief conversation with Kellam.  Kellam did not ask any interview questions but had another employee show Plaintiff around the warehouse.  When Plaintiff returned, Kellam asked Plaintiff if he was scared.  Plaintiff said no and was told to call McNeece and tell her that he was ready to begin work.  After the interview, Kellam completed an IEF on which he wrote, "Dustin has a back condition that I feel would limit his ability to be a good selector.  Says back gives him problems occasionally.  Due to the physical nature of the job, I don't feel that he would be able to handle it."  Kellam's Interview Evaluation Form of Dustin Tarr.

Plaintiff did not hear from McNeece for several weeks until she left a telephone message in which she told him that he had not gotten the job.  McNeece told Plaintiff that he lacked recent physical work experience.  She suggested that he get a job doing physical labor for about six months and reapply.

Plaintiff filed a charge of discrimination under the Americans with Disabilities Act ("ADA") 42 USC §12101, et seq. The EEOC issued a Determination finding probable cause that Plaintiff had been discriminated against.  Plaintiff filed the instant lawsuit against Defendant seeking damages and other relief for Defendant's alleged discrimination in violation of the ADA. By the instant motions, Defendant seeks Summary Judgment on all claims or, in the alternative, Partial Summary Judgment on Plaintiff's punitive damages claims.

II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The well-established principles pertinent to such motions can be distilled to a simple statement.

The Court may look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  E.g., Anderson v. Liberty Lobby, Inc., 477

U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

III. DISCUSSION

    A.    Claims and Factual Allegations of Discrimination Related to Plaintiff's Back Problems

Plaintiff argues in his Opposition to Defendant's Motion for Summary Judgment that Defendant regarded him as disabled because of surgery he had previously had on his back.  This contention is not considered herein.  Plaintiff first asserted this claim/ factual allegation in his Motion for Leave to File Second Amended Complaint.  This motion was filed three months beyond the deadline for amended pleadings.  The Court denied Plaintiff's motion stating, in part,

> The amendment to the factual statement will not be allowed. . . If, as suggested by Plaintiff, the addition adds no new cause of action, then it is unnecessary.  On the other hand if, by the addition, there is added a new cause of action with regard to a second type of disability, the late amendment will not be permitted.

Memorandum and Order Re Plaintiff's Motion for Leave to File Second Amended Complaint at 2.

Plaintiff contends that the Court's ruling "does not preclude Plaintiff's claim that he was regarded as disabled based on an alleged back condition as it does not create a new

6

cause of action."  Pl. Opp. to Def.'s M.'s for Summ. J. at note 14. However, the Court's ruling does indeed preclude such a claim unless it was found in the First Amended Complaint. It was not in that pleading and is not part of the instant Complaint.  The instant suit is based on Plaintiff's contention that he was regarded as disabled because of his epileptic seizures.  The back condition is totally separate and not alleged in the Complaint.  As such, the Court will not consider the claim or the factual allegations that Plaintiff was discriminated against because of any back problems.

    B.    <u>Claims and Factual Allegations of Discrimination Related to Plaintiff's Seizures</u>

The ADA was enacted to eliminate discrimination against individuals with disabilities and provides, in pertinent part,

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures....

42 U.S.C. § 12112(a).  Entities covered by the ADA include employers, employment agencies, labor organizations, and joint labor-management committees.  42 U.S.C. § 12111(2).  It is not disputed that Defendant is a covered entity.

Plaintiff's discrimination claim is evaluated under the burden-shifting scheme set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-804 (1973).  Plaintiff must first establish a

7

prima facie case. If Plaintiff is able to establish a prima facie case, Defendant must articulate a legitimate, nondiscriminatory reason for its action. If Defendant is able to articulate such a reason, the burden shifts back to Plaintiff to prove that Defendant's articulated reason was mere pretext for unlawful discrimination.

As a threshold matter, it is for the Court to determine whether or not Plaintiff was regarded as disabled. Whether [Plaintiff] meets the definition of the statute, and therefore can bring a claim under the statute, is a question of law for a court, not a question of fact for a jury." Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001). While Hooven-Lewis was a Rehabilitation Act case, the holding applies to ADA cases. "The standards used to determine whether an employer has discriminated under the Rehabilitation Act are the standards applied under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq., and the provisions of sections 501 through 504, and 510 of the ADA, 42 U.S.C. §§ 12201-12204 and 12210. See 29 U.S.C. § 791(g)." Id. See also Ennis V. National Association of Business and Educational Radio, Inc. 53 F.3d 55, 57 ("To the extent possible, we adjudicate ADA claims in a manner consistent with decisions interpreting the Rehabilitation Act.")

To establish a prima facie case of discrimination under the ADA, Plaintiff must establish that 1) he was an individual

8

with a disability as defined by the ADA; 2) Defendant had a vacant position for which Plaintiff applied; 3) Plaintiff was qualified for the position; and 4) Plaintiff was rejected under circumstances giving rise to an inference of unlawful discrimination.  Berstein v. The St. Paul Companies, Inc., 134 F.Supp.2d 730, 732 (D.Md. 2001).  To prove the first element of its prima facie case, Plaintiff must show that he is an individual with a disability within the meaning of the ADA. See 42 U.S.C. § 12112(a).  The ADA defines "disability" as: 1) an actual mental or physical impairment that substantially limits one or more of the major life activities of an individual; 2) a record of such an impairment; or 3) being regarded as having such an impairment.  Id. at § 12102(2).

Plaintiff contends that he is disabled within the meaning of the ADA because Defendant regarded him as being disabled.[3] Specifically, Plaintiff contends that Defendant failed to hire him for the job of selector because Defendant believed that, because Plaintiff suffered from seizures, Plaintiff was unable to handle the physical requirements of the job.  Plaintiff has presented no evidence to support this contention.

Plaintiff contends that the fact that Defendant asked about Plaintiff's seizures and medication and asked for

---

[3] Plaintiff does not contend that he suffers from an actual disability within the meaning of the ADA.

9

medical clearance is proof that it regarded him as disabled. Plaintiff cites an unpublished opinion wherein the Fourth Circuit found an employer's comments about an employee's physical condition sufficient to establish that the employer regarded him as disabled. See EEOC v. Town & Country Toyota, Inc., 2001 WL 369675 (4th Cir. 2001)(Unpublished). However, the comments made in the instant case do not rise to the level of the comments made in Town & Country Toyota.

In Town & Country Toyota, the Court held that "[a]n employer's comments referring to a plaintiff as 'disabled' are probative evidence that the employer regarded the plaintiff as disabled." Town & Country Toyota at **2, citing McInnis v. Alamo Comm. College Dist., 207 F.3d 276, 281 (5th Cir.2000). The employer in Town & Country Toyota told the employee that he needed to "be on disability," and told him that "anybody [would] kind of feel [a] little bad just watching [him] get around." In a letter responding to the EEOC charge against him, the employer wrote, "I found it difficult to employ someone who is obviously in such pain and misery in performing their job, especially when one is expected to interface with the public in a cheerful manner." Town & Country Toyota at **2.

In the instant case, McNeece asked, in the course of a job interview, if Plaintiff had ever been injured on the job.

10

Plaintiff responded that he had slipped, hit his head and had a seizure. McNeece followed up by asking if Plaintiff was on medication. Plaintiff replied that he was on medication for epilepsy. At the conclusion of the interview, McNeece left the room to talk with Shumaker. When she returned, McNeece asked Plaintiff to get medical clearance from his doctor to work. Tarr Dep. at 85-89. While McNeece's comments establish that she had questions about his ability to meet the work requirements, they are not proof that Defendant <u>regarded Plaintiff as disabled</u>. McNeece sought clarification and received it by way of the medical clearance from Plaintiff's doctor. Once that medical clearance was received, Plaintiff moved on to the next phase of the hiring process. This would indicate that Defendant did not regard Plaintiff as disabled because of the epilepsy.

    Furthermore, a person is regarded as being disabled if he

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments . . . but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. §1630.2(l). Thus, Plaintiff can only prevail if Defendant believed that the seizures limited one or more "major life activities." See 42 U.S.C. § 12102(2)(A).

Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff is contending that Defendant believe that the seizures limited him in the major life activity of working. However, with regard to working, the term "substantially limits" has been further defined to apply to one who is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I).

A class of jobs is

> [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment....

29 C.F.R. § 1630.2(j)(3)(ii)(B).

A "broad range of jobs in various classes" is

> [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar

>           training, knowledge, skills or abilities, within
>           that geographical area, from which the individual is
>           also disqualified because of the impairment....

29 C.F.R. § 1630.2(j)(3)(ii)(C).

Therefore, for Plaintiff to prove that Defendant regarded him as having an impairment that substantially limited the major life activity of working, Plaintiff must establish that Defendant perceived him to be significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes.  Even were the Court to assume that Plaintiff was not hired due to his condition, this would only establish that Defendant regarded him as incapable of doing the job of selector.[4]  As stated above, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I).  Plaintiff has failed to

---

[4] In his Surreply, Plaintiff argues that the view of epilepsy in the general populace is one of persons having seizures and losing control of their bodies.  He argues that one can infer that this is what McNeece believed.  Because of this inferred belief, it is also possible to infer that McNeece believed that Defendant could do no job that would require control of one's body.  Plaintiff has produced no evidence beyond McNeece's knowledge of Plaintiff's condition.  Plaintiff's belief that he was not hired because of his condition is not sufficient to establish a prima facie case and Plaintiff cannot establish his case by piling inference upon inference especially when Plaintiff has proffered evidence that Defendant did not hire him because they believed that his back problems, while not disabling, would keep him from doing heavy lifting.  See Interview Evaluation of Dustin Tarr.

establish that he was regarded as disabled and has thus failed to establish his prima facie case.

Even assuming that Plaintiff were able to establish that Defendant regarded him as disabled, Plaintiff's claim would still fail. While, Plaintiff can establish prongs two and three of a prima facie case, that Defendant had a vacant position for which Plaintiff applied and that Plaintiff was qualified for the position, Plaintiff has not submitted sufficient evidence to prove that he was rejected under circumstances giving rise to an inference of unlawful discrimination.[5]  See Bernstein v. The St. Paul Companies, Inc., 134 F.Supp.2d 730, 732 (D.Md. 2001).  McNeece had knowledge of Plaintiff's condition and asked for medical clearance from Plaintiff's doctor.  It is disputed whether or not the requested medical clearance related to the back problem or the seizures; however, viewing the evidence in the light most favorable to Plaintiff, the Court will assume that the request related to the seizures.  The fact that Plaintiff received a second interview after the clearance was given

---

[5]  Defendant does not make this argument; however Plaintiff, in his Opposition, argues and offers proof that he has established a prima facie case and further argues and offers proof that he can establish the elements required by McDonnell Douglas. The Court will continue its analysis as to whether Plaintiff has established a prima facie case and whether evidence has been presented to meet the McDonnell Douglas standard.

14

belies Plaintiff's contention that he was not hired due to the seizures.

Even if Plaintiff could establish his prima facie case, the burden would shift to Defendant to articulate a legitimate non-discriminatory rationale for its refusal to hire Plaintiff. Defendant's articulated reason for not giving Plaintiff the job was that Plaintiff expressed doubts about his ability to do the job. The Defendant having articulated this legitimate non-discriminatory rationale, Plaintiff has the burden of proving that the articulated rationale was mere pretext.

To establish pretext, Plaintiff, must prove "both that the [Defendant's articulated] reason was false, and that discrimination was the real reason" that he was denied a promotion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Plaintiff's proof of pretext is that Defendant has offered three different reasons for its decision not to hire Plaintiff. Plaintiff was first told that he was not hired because he lacked recent physical labor experience and that if he got a job and developed that experience, he should reapply. In his official rejection letter, Plaintiff was informed that another applicant had been chosen. The third reason offered was that Plaintiff lacked confidence or expressed doubt about his ability to do the job.

15

These three reasons are not contradictory and do not establish that the articulated legitimate non-discriminatory rationale is pretext. While it is true that the assertion of various reason for a failure to hire can be evidence of pretext, those answers must be contradictory or, at the very least, inconsistent. <u>EEOC v. Sears Roebuck and Company</u>, 243 F.3d 846, 852-253 (4th Cir. 2001). In <u>Sears</u>, the employer's first reason for failing to hire the plaintiff was that another person had been hired. In response to the EEOC charge, the employer said that it had not hired the plaintiff because he had failed to show up or contact the employer. Finally, during litigation the employer said that it had not hired the plaintiff because of a sexual harassment allegation. In holding that the fact that the plaintiff had offered different reasons for the failure to hire could be considered proof of pretext, the Fourth Circuit cited a First Circuit case which stated that, "[W]hen a company, at different times, gives different and <u>arguably inconsistent explanations</u>, a jury may infer that the articulated reasons are pretextual." <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st Cir. 2000)(emphasis added).

The reasons proffered by Defendant in the instant care are not inconsistent. In McNeece's telephone message to Plaintiff, Plaintiff was advised to get some physical work

16

experience and reapply.  When answering the EEOC charge and in the instant litigation, Defendant has said that because Plaintiff was hesitant about whether or not he could handle the physical requirements of the job, he was not hired and was advised to get some physical job experience.  The reasons for not hiring Plaintiff, that he lacked physical work experience and that he was not confident in his ability to do the work, while technically different, are not inconsistent.  Plaintiff's rejection letter stated that another person had been hired for the position.  Again, if we consider this to be a proffered reason for refusing to hire Plaintiff, this reason is not inconsistent with the stated reason for refusing to hire Plaintiff.  Another person was hired, ostensibly the person was chosen over Plaintiff because he was not confident in his ability to do the job.

   Defendant's burden to articulate a legitimate, non-discriminatory reason for not hiring Plaintiff is one of production, not one of proof.  Defendant is not required to prove the truth of its articulated rational.  Plaintiff, on the other hand, has a burden of proof and must prove that the articulated reason was pretext.  Plaintiff has not done this merely by noting the different rationales offered by Defendant.  Nor was Defendant's reason offered so late in the process as to indicate that it was a post-hoc rationale.

17

<u>Sears</u> 243 F.3d at 853.  In <u>Sears</u>, the employer asserted one reason in response to the EEOC complaint and another in the course of litigation.  In the instant case, the Defendant articulated the same reason in response to the EEOC charge and in the course of litigation.  Furthermore, the plaintiff in <u>Sears</u> presented additional evidence that the employer's reasons were mere pretext.  In the instant case, Plaintiff does not offer any further evidence beyond bold assertions that Defendant lacks credibility.  This is not enough to prove pretext.

Plaintiff has failed to present evidence sufficient to establish that Defendant's proffered legitimate, non-discriminatory reason for not hiring Plaintiff was pretextual.  Accordingly, Defendant would be entitled to summary judgement even if Plaintiff were found to have established a prima facie case.

IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendant's Motion for Summary Judgment [Paper 56] is GRANTED.

2. Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim [Paper 55] is DENIED AS MOOT.

3. Plaintiff's Motion for Leave to File a Surreply [Paper 60] is GRANTED.

4.   Judgment shall be entered by separate Order.


SO ORDERED, on Wednesday, March 5, 2003.


                                                            /s/
                            _____
                                 Marvin J. Garbis
                          United States District Judge